**Corrected**

# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-2164V
UNPUBLISHED

| | |
|---|---|
| LORI BLACK,<br><br>    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>    Respondent. | Chief Special Master Corcoran<br><br>Filed: June 11, 2024<br><br>Special Processing Unit (SPU);<br>Ruling on the Record; Damages;<br>Influenza (Flu) Vaccine; Guillain-<br>Barré Syndrome (GBS) |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for petitioner.

*Katherine Carr Esposito*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION AWARDING DAMAGES[1]

On November 12, 2021, Lori Black filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered from Guillain Barré syndrome ("GBS") caused by an influenza ("flu") vaccine administered on November 17, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"), and entitlement was found in the Petitioner's favor on September 6, 2022. The parties reached on impasse on the appropriate award for pain and suffering, and the matter was submitted for an SPU "Motions Day" hearing.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I award **$140,000.00** in compensation for actual pain and suffering, plus **$1,087.37** for unreimbursed medical expenses, and **$130.92** for travel expenses.

## I. Medical Records

Ms. Black received a flu vaccine on November 17, 2018. Ex. 1 at 9. Approximately thirteen days later, Petitioner reported muscle and joint discomfort, reduced strength, and trouble walking. Ex. 5 at 8, 10. She was admitted to the hospital and had a lumbar puncture, an MRI, and started IVIg therapy on November 30, 2018. *Id.* at 542, 582. A consultation with a neurologist on December 2, 2018 resulted in a diagnosis of inflammatory demyelinating polyradiculopathy ("AIDP") (Ex. 6 at 583), which was confirmed by an EMG/NCS study on December 5, 2018. *Id.* at 527-29.

Petitioner was discharged following a five-day course of IVIg to an inpatient rehabilitation facility on December 6, 2018, where she stayed for eight days. Ex. 6 at 662, 285-86. Following that, Petitioner had two physical therapy sessions. *Id.* at 134-38, 153.

On January 4, 2019, Petitioner saw neurologist Dr. Fahey and reported she was 65-70% improved. Ex. 6 at 116, 118. She saw her neurologist again on February 4, 2019, and stated she was 90-95% improved at that time but still had paresthesia in her lower extremities. *Id.* at 92. One month later, Petitioner reported ongoing numbness and pain in extremities, however Dr. Fahey noted the location and type of pain were "distinctly unusual for GBS." *Id.* at 83.

In the following months, Petitioner reported no significant change in her condition and requested a handicapped parking tag. Ex. 6 at 68. She also continued to report discomfort in her toes and continued use of a walker. *Id.* at 63-64. Petitioner continued to reported ongoing foot pain and discomfort until at least January 13, 2021, however a podiatrist noted this was "most likely due to degenerative/arthritic changes." Ex. 2 at 19-21.

## II. Affidavit Evidence

Petitioner submitted an affidavit in support of her petition describing her course of treatment and how GBS impacted her life. Ex. 7.

## III. Damages

Petitioner filed a memorandum in support of damages on March 15, 2023, seeking $155,000.00 for pain and suffering, $1,747.28 for medical expenses, and $130.92 for

medical mileage. Petitioner's Memorandum in Support of Damages ("Pet. Br."), ECF No. 37. Respondent reacted with his own brief on May 15, 2023, arguing that $87,500.00 is an appropriate amount for pain and suffering, and $1,087.37 for unreimbursed expenses, and $40.08 for mileage. Respondent's Brief on Damages ("Res. Br."), ECF No. 38.

IV.     **Standard**

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which (i) resulted from the vaccine-related injury for which the petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (citing *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with that of my predecessor Chief Special Masters) adjudicating similar claims.[3] *Hodges v. Sec'y of*

---

[3] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases were assigned to former Chief Special

*Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated that the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum (between zero and the $250,000.00 cap), that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). *Graves* maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 589-90. Instead, pain and suffering should be assessed by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 593-95. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards within a spectrum that ends at the cap. While *Graves* does not control the process used herein to calculate pain and suffering, it stands as wise counsel.

## V.     Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Ms. Black was a competent adult with no impairments that would impact the awareness of her injury. Therefore, my analysis focuses primarily on the severity and duration of Petitioner's injury. When performing this analysis, I review the record as a whole, including the medical records and affidavits filed, all assertions made by the parties in written documents, and the arguments presented during the Motions Day hearing.

Petitioner cites to a number of damages decisions involving GBS injuries that resulted in $135,000.00 - $180,000.00 awards.[4] Pet. Br. at 13-14. Petitioner notes that Ms. Black's treatment included a six-day course of hospitalization, a lumbar puncture, MRIs, an EMG/NCS study, a course of IVIg treatment, eight day inpatient rehabilitation stay, physical therapy, and ambulatory assistance, and three years of lasting symptoms. Pet. Br. at 22-26.

---

Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[4] In particular, Petitioner cited to *Shankar v. Sec'y of HHS,* No. 19-1382V, 2022 WL 2196407 (Fed. Cl. Spec. Mstr. May 5, 2022) (awarding $135,000 for pain and suffering); *Robinson v. Sec'y of HHS*, No. 18-88V, 2020 WL 5820967 (Fed. Cl. Spec. Mstr. Aug. 27, 2020) (awarding $180,000 for pain and suffering); *Francesco v. Sec'y of HHS*, No. 18-1622V, 2020 WL 6706654 (Fed. Cl. Spec. Mstr. Oct. 15, 2020) awarding $165,000 for pain and suffering); and *Clemens v. Sec'y of HHS*, No. 19-1547V, 2022 WL 2288515 (Fed. Cl. Spec. Mstr. May 17, 2022) (awarding $180,000 for pain and suffering).

Respondent argues that the severity of Ms. Black's GBS was less than what is evident from such other prior cases. Res. Br. at 14-16. Petitioner's pain levels were relatively mild, her treatment did not involve complications, she attended very little out-patient physical therapy, and her condition improved rapidly. attended any in-patient rehabilitation, and had a relatively short period of therapy. *Id.* at 11-14.

After reviewing the record in this case, the evidence best supports the conclusion that Ms. Black experienced a mild-to-moderate case of GBS. She was fortunate to receive a relatively prompt diagnosis and appropriate treatment with IVIg. Her in-patient care occurred over two weeks and almost no subsequent physical therapy. Ms. Black made quick initial progress over the first three months with minimal physical therapy, but continued to experience some fatigue and gait issues for two years

Respondent's proposed award of $87,500.00 does not give sufficient credence to the seriousness of GBS as a general matter, or to the facts of this specific case. Petitioner has better substantiated her demand than Respondent. And the award amount she seeks reasonably balances the seriousness of GBS against her overall course. However, the present facts are not directly comparable to the damages determinations cited by Petitioner, particularly in the cases cited wherein pain and suffering awards were $180,000.00. In those cases, the injured party experienced an identifiable effect on their career, life, or daily living, which is harder to show here due to Ms. Black's short course of treatment and relatively swift recovery. *See, e.g. Dillenbeck* 2019 WL 4072069, at *14; *Devlin*, 2020 WL 5512505 at *3; *Francesco*, 2020 WL 6705564 at *4; *W.B.*, 2020 WL 5509686 at *5.

Ms. Black's situation is most similar to the petitioner in *Weil v. Sec'y of Health & Hum. Servs.*, No. 21-0831V, 2023 WL 1778281 (Fed. Cl. Spec. Mstr. Jan. 6, 2021) (awarding $140,000 for pain and suffering). In *Weil*, the petitioner was 61 years old, was treated fairly soon after vaccination, and was admitted for five days with an additional 20 day in-patient rehabilitation stay and one month of physical therapy. That petitioner had a good recovery within ten weeks, but reported lingering issues for eight months. In contrast, Ms. Black had less in-patient care and physical therapy, but had lingering gait issues resulting in long-term use of a walker and handicap parking.

Balancing the severity of a GBS injury and the moderate disease course and treatment requirements demonstrated by this record, and considering the arguments presented by both parties and a review of the cited cases, I find that **$140,000.00** in compensation for actual pain and suffering is reasonable and appropriate in this case.

### VI. Unreimbursed Out-Of-Pocket Expenses

Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation ... determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer*, 1996 WL 147722, at *22-23.

Petitioner seeks $1,747.28 for expenses related to her injury. Pet. Br. at 21. Respondent agrees to $1,087.37 of this amount, but contests expenses that he argues are unrelated to Petitioner's GBS - in particular the cost of a replacement power recliner purchased on February 21, 2021. *Id.,* Res. Br. at 17-18. Petitioner claims that the replacement chair was necessary because she could not climb stairs and needed it to sleep. Pet. Br. at 21-22. However, as Respondent notes, Petitioner's symptoms had improved significantly prior to the purchase, and she reportedly could get anywhere she needed to be by June 15, 2020. Res. Br. at 17-18.

I agree with Respondent that the purchase of the replacement chair does not seem to be related to Petitioner's injury, especially because it was purchased after she had shown significant improvement. Therefore, based on the above, I award only $1,087.37 for past unreimbursed expenses.

Petitioner also seeks $130.92 for related travel expenses, in particular mileage associated with her care, which was calculated using the business rate. Pet. Br. at 20. Respondent argues that the appropriate calculation should use the "medical rate", which would result in an award of $40.08. Res. Br. at 20-21. As set forth in my recent decision, *Gibson v. Sec'y of Health & Hum. Servs.*, No. 20-0243V, 2022 WL 17820891, at *12 (Fed. Cl. Nov. 16, 2022), however, it has been my determination that the higher business rate is properly applied in the context of Vaccine Act cases. Therefore, based on the above, I award $130.92 for Petitioner's travel expenses.

### Conclusion

For all of the reasons discussed above, and based on consideration of the record as a whole, **I award Petitioner a lump sum payment of $141,218.29 (representing $140,000.00 for actual pain and suffering, $1,087.37 for unreimbursed medical expenses, and $130.92 for travel expenses) in the form of a check payable to Petitioner.**

      This amount represents compensation for all items of damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[5]

**IT IS SO ORDERED.**

                                                **s/Brian H. Corcoran**
                                                Brian H. Corcoran
                                                Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.